## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **HODELL-NATCO INDUSTRIES, INC.,** | : | **Case No.** |
| **7825 Hub Parkway** | : | |
| **Cleveland, Ohio 44125** | : | **Judge** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JURY DEMAND ENDORSED** |
| | : | **HEREON** |
| **GLOBE-CON INTERNATIONAL, INC.,** | : | |
| **7 E Silver Springs Blvd Ste. 205** | : | |
| **Ocala, FL 34470** | : | |
| | : | |
| **and** | : | |
| | : | |
| **c/o Susan J. Bordas, Statutory Agent** | : | |
| **5319 97th Street Circle E** | : | |
| **Bradenton, FL 34211** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff Hodell-Natco Industries, Inc. ("Hodell"), by and through its undersigned counsel, brings this action against Defendant Globe-con International, Inc. ("Globe-con") and alleges and states as follows:

## NATURE OF THE ACTION

1.      This is a civil action arising from Globe-con's breach of contract, breach of express and implied warranties, and its negligent misrepresentations regarding its supply of defectively manufactured thread-cutting screws that were to be produced and supplied by Globe-con for installation at various commercial construction sites throughout the country.  The screws were supplied to Hodell's customer to affix large wooden beams to metal trusses that were to be installed in commercial buildings in earthquake zones. Globe-con specifically represented that it was

1

capable of producing the screws to the precise specifications required by Hodell and its customer and further certified that each delivery of the screws met the required specifications.  As set forth below, Hodell asserts that the screws supplied by Globe-con were defective and non-conforming, requiring Hodell and its customer to endure a massive recall effort at extraordinary expense.

## THE PARTIES

2.      Plaintiff Hodell is a corporation organized under the laws of Ohio with its principal place of business in Cleveland, Ohio.  Hodell is a full-service industrial fastener supplier and collaborates with its customers to develop unique supply solutions.

3.      Defendant Globe-con is a corporation organized under the laws of Florida with its principal place of business in Ocala, Florida. Globe-con operates as a supplier and importer of, among other things, industrial fasteners and screws.  Upon information and belief, Globe-con operates an affiliate company in Taiwan from which it sources certain products.  Globe-con holds itself out as an expert in the supply of materials such as the screws at issue herein.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because Hodell and Globe-con are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Globe-con under Ohio's long-arm statute because it conducts substantial business within Ohio, contracts to supply goods in Ohio including the contracts for goods at issue in this case, has breached express and implied warranties with respect to the sale of goods to an Ohio corporation, and has caused tortious injury to Hodell in Ohio.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Hodell's claims occurred in Cleveland, Ohio which is within this judicial district.

7.      The Court has the power to grant the declaratory relief sought in this action pursuant to 28 U.S.C. § 2201.

## FACTUAL BACKGROUND

8.      In 2022, Hodell had a contract with a customer to supply hex washer thread cutting screws (the "Screws") for use in several construction projects throughout the United States.  The Screws were to be supplied to Hodell's customer for use in affixing large wooden beams to metal trusses that were to be installed in commercial buildings in earthquake zones.  Due to the nature of their use, the Screws were required to meet specific specifications provided by Hodell.

9.      In early 2022, Globe-con offered to quote Hodell as an authorized vendor to supply the Screws.  Prior to that time, Hodell was sourcing the screws from two alternative vendors.  However, based upon Globe-con's representations concerning its expertise and capabilities and its ability to source the Screws to Hodell's specifications, Hodell entered into negotiations with Globe-con to supply the Screws and Hodell provided Globe-con with a schematic showing the exact specifications the Screws were required to meet (the "Specifications").  In connection with those negotiations, Globe-con provided a "test run" of the Screws, which Hodell submitted to third-party testing and verified compliance with the required Specifications.

10.     Because of these representations, and the third-party testing verification of the "test run," Hodell approved Globe-con as a vendor for the Screws and issued three separate Purchase Orders to Globe-con to supply the screws.

11.     The terms of each Purchase Order issued to Globe-con, which Globe-con accepted, mandated that the Screws would comply with the Specifications provided to Globe-con.  Globe-

con was responsible for ensuring and verifying that the Screws were manufactured to the Specifications.  Specifically, the Purchase Orders stated:

    a.   "Inspection Report, Material, and Plating Certs Required."

    b.   **"**All product must be manufactured to the accompanying standards and packaging requirements.  This order is not valid without the accompanying standards requirements."

    c.   "Mill Test Reports required on all heat treated products."

True and accurate, redacted, copies of the Purchase Orders are attached hereto as **<u>Exhibit A</u>**.

12.     Each time Hodell issued a Purchase Order, Globe-con was responsible for sourcing the supply of the Screws from its manufacturing partner in Taiwan.  Once the Screws were manufactured pursuant to a Purchase Order, the Screws would remain in Taiwan until Hodell directed a shipment of a specified amount of the Screws.

13.     Prior to accepting each delivery, Hodell received a certification from Globe-con certifying that the Screws met the required specifications.  Hodell reasonably relied upon these certifications in accepting the shipments, in requesting shipment of additional Screws under the same Purchase Order, and in issuing subsequent Purchase Orders to Globe-con for the Screws.  True and accurate copies of the certifications provided by Globe-con are attached hereto as **<u>Exhibit B</u>**.

14.     In September and October 2022, Hodell began providing the Globe-con supplied Screws to its customer for installation at the customer's production facility in Fallon, Nevada.  Several months later, Hodell received a report from its customer of incidents of the Screws cracking and breaking.

15.     In February 2023, Hodell's customer notified Hodell that the cracking and breaking issues with the Screws had become more frequent and widespread, at which point Hodell notified Globe-con of the issue.  At this time, Hodell informed Globe-con that it was having the Screws evaluated by a third-party testing service.

16.     The failure analysis performed by Hodell's third-party vendor revealed that the failing Screws were manufactured to a "core hardness" that exceeded the Specifications.  This resulted in the Screws being unable to withstand certain vibrations and other conditions necessary for them to be utilized by Hodell's customer.

17.     During this time, an additional shipment of the Screws arrived at Hodell's facility. Hodell conducted hardness testing of several sample of these Screws and found that the samples failed the hardness testing, rendering it non-compliant with the Specifications.

18.     Prior to the testing and failure analysis, the hardness issue was unknown to Hodell as the defect was not discoverable or apparent through commercially reasonable measures when the Screws were delivered.  Further, Hodell relied upon the certifications provided by Globe-con representing that the Screws had been examined prior to shipment and complied with the Specifications.

19.     Hodell provided the results of its failure analysis and testing to Globe-con and rejected the non-confirming shipments. Hodell further demanded that Globe-con immediately provide replacement Screws that met the Specifications, along with assurances of future performance pursuant to the Purchase Orders and the Specifications.

20.     Rather than acknowledging responsibility and immediately supplying conforming Screws to keep Hodell's customer from shutting down its production, Globe-con asked to perform its own testing on the failed Screws.  Hodell informed Globe-con that it had received testing results

from two separate independent labs, both of which confirmed the hardness issue with the Screws, and that further testing was unnecessary and would only cause unnecessary delay.  Upon information and belief, Globe-con also had testing performed on the Screws, which also demonstrated that the Screws failed to meet the hardness specifications.

21.      Globe-con continued to delay and failed to acknowledge responsibility for the failed Screws.  Globe-con waited an unreasonable amount of time to acknowledge Hodell's concerns and waited weeks before it proposed a solution to the problem.

22.      During this time, Hodell's inventory of non-defective Screws was depleted and Hodell was in danger of being unable to supply the requisite amount of Screws to its customer. Hodell therefore was required to make accommodations to its customer and source the Screws from other vendors at a higher cost than had been agreed to with Globe-con.  Absent these accommodations, Hodell's customer would be forced to shut down its entire production process.

23.      Despite these failures and delays, Hodell continued to work with Globe-con to find a solution to the non-conforming Screws. Hodell and Globe-con each tried an experimental process to "re-work" the non-conforming Screws through separate heat-treatment vendors in an attempt to have them meet the hardness specifications.   However, this potential solution proved to be unfeasible given the time constraints, the experimental nature of the process, the significant uncertainty of success, and the lack of a vendor that would warrant or certify that the "re-worked" Screws would not break or crack after being heat-treated.   Additionally, doing so would have required Hodell's customer to shut down its production completely while Globe-con engaged in this experimental process.  Hodell and its customer were unwilling to be a test case with respect to this experimental process, particularly given the Screws' ultimate use.

24.    Globe-con further proposed sourcing additional lots of Screws from the same manufacturer that had supplied the non-conforming and failing Screws.  However, obtaining those Screws would have taken a significant amount of time and would have required a shutdown of Hodell's customer's production facilities during this time due to lack of Screws.  Additionally, based upon the misrepresentations and false certifications previously provided by Globe-con, Hodell's customer was unwilling to allow further Screws from Globe-con's supplier to be utilized, thus Hodell had to permanently source the Screws from a different manufacturer at added expense.

25.    By the time the issue with the non-conforming Screws was discovered, thousands of the Screws had been installed in steel joists, which themselves had been installed in commercial construction projects throughout the country.  As such, Hodell and its customer were forced to engage in a massive recall effort whereby they had to inform each construction site of the issue, locate the affected Screws, and remove them from the project either preemptively or after they had already been installed.  This effort took over a year and was finally concluded in February 2024.

26.    Hodell has reimbursed its customer significant sums in labor, travel, and other related costs and expenses, and has itself incurred testing, remediation and recall costs as a direct and proximate result of the failure of the Screws to meet the Specifications and the inherent defect in the Screws caused by their failure to meet hardness requirements.

### FIRST CLAIM FOR RELIEF

**(Breach of Contract – Breach of Express Warranty)**

27.    Hodell incorporates by reference the previous Paragraphs of this Complaint as if fully restated herein.

28.    During negotiations, Hodell provided Globe-con with a schematic showing the exact Specifications the Screws were required to meet.

29.    Globe-con specifically represented that it was capable of producing the screws to the precise specifications required by Hodell and its customer and further certified that each delivery of the screws met the required specifications.

30.    Each Purchase Order that Hodell issued to Globe-con contained terms that mandated that the Screws would comply with the provided Specifications.

31.    There was an express warranty that the Screws would comply with the Specifications.

32.    Globe-con breached this express warranty by delivering Screws that did not meet the agreed Specifications.

33.    As a direct and proximate result Globe-con's breach, Hodell has suffered or will suffer damages in an amount in excess of $75,000, the exact amount of which is to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation)

34.    Hodell incorporates by reference the previous Paragraphs of this Complaint as if fully restated herein.

35.    During all times relevant hereto, Globe-con held itself out as an expert in the profession of sourcing and supplying specialized Screws for businesses such as Hodell.  Globe-con made these representations directly to Hodell in connection with the parties' prior relationship and specifically with regard to its attempt to secure Hodell's business in connection with the Screws.

36.    Globe-con made specific representations to Hodell regarding its ability to supply the Screws in conformance with the Specifications.

37.     Globe-con further made specific representations when it issued certifications stating that the Screws had been tested and were confirmed to comply with the Specifications.

38.     Globe-con, in the course of its business, supplied information and advice to Hodell regarding the Screws including by issuing the certifications referenced above. Globe-con knew that Hodell was relying upon these statements and information in accepting the shipments and supplying the Screws to its customer.

39.     Globe-con's statements regarding its capabilities and its misleading certifications regarding the Screws' compliance with the Specifications constitute material misrepresentations upon which Hodell reasonably relied.

40.     Hodell reasonably relied upon these misrepresentations to its detriment by accepting the Screws and supplying them to its customer.

41.     As a direct and proximate result Globe-con's misrepresentations, Hodell has suffered or will suffer damages in an amount in excess of $75,000, the exact amount of which is to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Declaratory Judgment)

42.     Hodell incorporates by reference the previous Paragraphs of this Complaint as if fully restated herein.

43.     This is a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201. Hodell seeks a judicial determination of the rights and duties of Hodell and Globe-con with respect to an actual controversy arising from future losses arising from the non-conforming Screws, from Globe-con's asserted entitlement to payment for other goods shipped to Hodell independent of the

non-conforming and failing Screws and from Hodell's cancellation of open purchase orders previously submitted to Globe-con.

44.      Although Hodell and its customer have completed the recall and remediation efforts associated with the non-conforming Screws, Hodell may suffer additional losses in the future should additional issues be discovered or should additional Screws previously installed at the various jobsites fail or encounter issues arising from their non-compliance with the Specifications. Hodell asserts that should any additional losses be incurred beyond those already suffered, it is entitled to recover from Globe-con any and all losses suffered by Hodell arising from the breaches, misrepresentations, and other conduct described herein.

45.      Hodell further asserts that as a result of the doctrines of set off and recoupment, it is not liable for any amounts that Globe-con may claim is due and payable, including for other shipments independent of the non-conforming Screws.

46.      Additionally, Hodell asserts that it was entitled to cancel certain open purchase orders with Globe-con for product that was never shipped, thus requiring Hodell to secure replacement product from other suppliers.

47.      There is an actual, justiciable controversy existing between Hodell and Globe-con with respect to Globe-con's obligation to compensate Hodell for additional amounts Hodell may be obligated to pay because of the breaches and conduct described herein, Hodell's obligation to pay for the amounts billed for unrelated shipments, and Hodell's right to cancel the open purchase orders.

48.      The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between Hodell and Globe-con.  The dispute between the parties over these issues is of sufficient immediacy to justify the issuance of declaratory relief by this Court.

49.     Pursuant to 28 U.S.C. § 2201, Hodell is entitled to a declaration that Globe-con must compensate Hodell for any future losses associated with the non-conforming Screws; that Hodell is entitled to set off any amounts due for other products delivered by Globe-con in partial satisfaction of the losses arising from the non-confirming Screws (which setoff will not make Hodell whole); and that Hodell is entitled to cancel the above-referenced open purchase orders previously submitted to Globe-con.

WHEREFORE, Hodell-Natco Industries, Inc. prays for a judgment on its Complaint as follows:

A.      On its First Claim for Relief, an award of all direct and indirect compensatory damages resulting from Globe-con's breach in an amount to be established at trial, but no less than $75,000.00;

C.      On its Second Claim for Relief, an award of all direct and indirect compensatory damages and attorneys' fees incurred in this action as a result of Globe-con's misrepresentations described above in an amount to be established at trial, but no less than $75,000.00;

D.      On its Third Claim for Relief, a declaration that (1) Globe-con must compensate Hodell for any future losses associated with the non-conforming Screws; (2) that Hodell is entitled to set off any amounts due for other products delivered by Globe-con in partial satisfaction of the losses arising from the non-confirming Screws (which setoff will not make Hodell whole); and (3) that Hodell is entitled to cancel the above-referenced open purchase orders previously submitted to Globe-con.

D.      An award of attorneys' fees, costs, and pre- and post-judgment interest at the maximum statutory or other rate; and

E.      Such other and further relief as this Court deems proper and just.

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP

/s/ P. Wesley Lambert
P. Wesley Lambert (0076961)
121 South Main Street, Suite 575
Akron, Ohio 44308
Telephone: (330) 572-7320
Facsimile: (330) 572-7321
wlambert@shumaker.com

and

Thomas P. Dillon (0059899)
Nicholas T. Stack (0086333)
Thomas J. Kirkham (0098865)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Telephone: (419) 241-9000
Fax:      (419) 241-6894
tdillon@shumaker.com
nstack@shumaker.com
tkirkham@shumaker.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands, pursuant to Fed. R. Civ. P. 38(b), trial by a jury constituted of

the maximum number of jurors permissible by law on all issues triable at law.

/s/ P. Wesley Lambert
P. Wesley Lambert (0076961)
*Attorneys for Plaintiff*

12